MID-SOUTH PUB. CO. *et al. v.* RAYBON.

*(Nashville,* December Term, 1953.)

Opinion filed May 21, 1954.

EWING SMITH, of Murfreesboro, for appellants.

J. W. HUGGINS and BEN R. KERR, both of Murfreesboro, for appellee.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

This suit originated in the Circuit Court of Rutherford County by petition of Lucy Raybon to recover compensation for the death of her husband, Odie Raybon, as provided by the "Workmen's Compensation Law of Tennessee."

The only question made in the one assignment of error is that there is no causal connection with the injury and the death of the said Odie Raybon.

The deceased was in the regular employ of Mid-South Publishing Company, and his injury and death is alleged to have resulted from first, second and third degree burns. The accident happened on April 29, 1951, and he died the following February, 1952. It is conceded by the defendant that the accident arose out of and in the course of his employment. While at work at or near a printing press he was "severely burned by an explosion of oil or gas in said press pit." The extent of his injuries is described by Dr. Kaufman as follows: "* * * most of his arms up to, well within say three inches of his shoulder, the entire front of his face, neck, ears, lips, forehead, nose, eyebrows, all that and part of his hair. And I have

forgotten but my record shows that both knees were burned too.'' Some ''were third degree burns.''

The deceased was hospitalized and given the necessary treatment for his injuries. He entered the hospital on April 29, 1951, and was discharged on May 12, 1951, and died as above stated in February, 1952. After leaving the hospital he was confined to his home being ''in bed part of the time and up part of the time'' and was under treatment of Dr. Kaufman, who was in the regular employ of the defendant's insurance carrier. For at least a month after leaving the hospital he was unable to feed himself.

It appears that in September, 1951, he developed a swelling in his right foot and leg. Dr. Kaufman described it as ''terrific'' and later required an operation. There was more than one operation. When asked to state the cause of the leg condition he said it indicated ''thrombo phlebitis''. In a letter to the Agent of the Insurance Company, supplementing his report of October 9, 1951, he stated the disability in the right leg began in August ''and became quite disabling for the first part of September.'' Continuing he states, ''From the history of the case and physical findings the diagnosis of this is syphilitic osteitis.'' This leg condition developed approximately three months following the accident and while he was under treatment at his home. The letter contains the following significant and important statement: ''It is my opinion that had Odie not been burned and suffered a considerable degree of shock, weakness and disability *due to his extensive burns, this leg condition would never have shown up.''* (Emphasis ours.) But he added: ''This is purely speculative and impossible to prove.''

The learned doctor expressed the opinion that ''the

470

primary cause of death was acute heart failure.'' We here quote the following relevant testimony of the doctor:

"Q. You say his heart just stopped beating. Acute heart failure. A. Yes, it is more than that. I mean the heart was just, it had stood all it could stand. It couldn't stand any more. It had been beating against this big old leg trying to drive blood through that leg that couldn't get there.

"Q. Had the strain that been placed, the leg placed on his heart, do you think that that could have had something to, some causal connection. * * * A. It had half to do with it.

"Q. Half to do with it? A. Yes, sir. That leg, you see that put a tremendous load on a heart that is designed to pump blood through a diseased limb like that.

"Q. Well, now in other words, if it hadn't been for this diseased limb it is quite likely and most probable that the strain would not have been. * * * A. He probably would be here today.

"Q. He probably be here today? A. Probably. I mean as far as we know from what we know about.

"Q. From what you know about. A. Yes, sir." (Tr. pp. 54 and 55.)

We think it definitely appears that the deceased was never released to go to work after he was burned, as shown by the following questions to Dr. Kaufman and his answers:

"Q. Doctor, did Odie Raybon, did you ever release him to go back to work any time after you treated him for his burns, first, treated him. * * * A. No, sir.

* * * * * *

"Q. You never released him to go back to work though did you? A. No, sir. I released him from compensation and he went to the hospital." (Tr. pp. 58 and 59.)

The petitioner introduced Dr. Matt B. Murfree, who expressed the opinion in answer to a hypothetical question, that the severe burns were a disturbance of the normal blood supply and aggravated a condition of "thrombo phlebitis". This statement seems to be corroborative of Dr. Kaufman's letter, and that if it had not been for excessive burns it would not have developed.

It is reasonable to conclude that the death of Odie Raybon was indirectly, if not directly, caused by the severe burns, all of which have been more or less described in detail. The evidence when considered as a whole, both direct and circumstantial, fully sustains the judgment of the trial court. It thereupon results that the appellants' assignment of error, based upon the alleged insufficiency of the evidence, is overruled.

There is no merit in the assignment that, "The Court erred in refusing to permit counsel for petitioner to restate the hypothetical question propounded to Dr. Murfree." There is no showing that the question was not broad enough to cover all the relevant facts. The framing of the question was under the direction of the trial judge, and his final action was not subject to criticism.

The judgment of the trial court is affirmed, and the case is remanded for such further action as may be necessary for its enforcement and final disposition.